UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTICT OF FLORIDA

CASE NO.: 19-CV-23694-DPG

XPORT AUTO PARTS, INC.,
A Florida Corporation,

    Plaintiff(s),

v.

www.xportautoparts.com; GoDaddy.com, LLC;
Unknown Registrant A/K/A Memerio Kernado
A/K/A Jed Doering; Registrar of Domain Names
Reg.Ru, LLC,

    Defendants.
_____/

**PLAINTIFF'S EXPEDITED *EX-PARTE* APPLICATION FOR ENTRY OF
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

The Plaintiff, XPORT AUTO PARTS, INC., by and through undersigned counsel and pursuant to Fed. R. Civ. P. 65, files this Expedited *Ex-Parte* Application for Entry of Temporary Restraining Order (the "Application") against Defendants, and states as follows:

I.    **INTRODUCTION**

1. Plaintiff XPORT AUTO PARTS, INC. is a family business that was founded and incorporated in the State of Florida on or about September 12, 2011. Plaintiff's is in the business of exporting automobile parts to over 80 countries.

2. Since 2011, XPORT AUTO PARTS, INC. has owned the domain name xportautoparts.com, and has utilized this domain name (the "Domain Name") as its portal to the world and main source of business and clientele.

1

3. On August 15, 2019, the Domain Name was stolen through a cybertheft known as domain name high-jacking, in a malicious scheme conducted by Defendant with the sole purpose of demanding ransom (payable in bitcoin) for the return of the domain name.

## PARTIES

4. Plaintiff XPORT AUTO PARTS, INC. is a Florida corporation with its principal address at 1070 SE 9th Terrace, Hialeah, FL 33010.

5. Defendant GoDaddy.com, LLC is a corporation, duly organized and existing under the laws of Delaware, with its principal office and place of business located in Scottsdale, Arizona. Based on information and belief, Defendant GoDaddy.com, LLC does business in the State of Florida.

6. Defendant Registrar of Domains Reg.Ru LLC is a Russian entity with a principal office and place of business located in Russia. Based upon information and belief, Reg.Ru does business in the State of Florida.

7. Defendant Unknown Registrant A/K/A Memerio Kernado A/K/A Jed Doering ("Unknown Registrant") is an unknown person residing in an unknown location. Based upon information and belief, Defendant Unknown Registrant has engaged in substantial activity in the State of Florida in connection with the matters from which this action arises. Additionally, based on information and belief, Defendant Unknown Registrant uses the aliases "Memerio Kernado" and "Jed Doering;" however, Plaintiff has reason to believe that these are not the Unknown Registrant's real name.

8. Non-Party VERISIGN, Inc. (hereinafter "VERISIGN") is a corporation, duly organized and existing under the laws of the State of Delaware, with its principal office and place of

business located in Virginia. Based on information and belief, Defendant VERISIGN does business in the State of Florida.

9. Non-Party Internet Corporation for Assigned Names and Numbers (hereinafter "ICANN") is a nonprofit corporation, organized and existing under the laws of the State of California, with its principal office and place of business located in Marina del Rey, California. Based on information and belief, Non-Party ICANN does business in the State of Florida.

**II.    JURISDICTION AND VENUE**

10. The Plaintiff is seeking injunctive and other equitable relief as a result of the actions of Defendants Unknown Registrant and Registrar of Domain Names Reg.Ru, LLC ("Reg.Ru").

11. Unknown Registrant has taken control of the Domain Name, in violation of Plaintiff's trademark rights, and redirected the income generated to Unknown Registrant's name. By his unauthorized actions, Unknown Registrant has prevented Plaintiff from using and controlling its domain name, causing irreparable injury to Plaintiff.

12. This action arises out of Unknown Registrant's violation of Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) and the Computer Fraud and Abuse Act, 18 U.S.C. 1030.

13. This Court has original jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises out of Defendant's violation of the Federal Computer Fraud and Abuse Act, (18 U.S.C. § 1030), Electronic Communications Privacy Act (18 U.S.C. § 2701), and the

Lanham Act (15 U.S.C. §§1114, 1125). This Court has supplemental jurisdiction to decide state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

15. Further, the matter in controversy exceeds the sum of or value of $75,000, exclusive of interest and costs. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

### III.   STATEMENT OF FACTS

16. Plaintiff XPORT AUTO PARTS, INC. was founded and incorporated in the State of Florida on or about September 12, 2011. XPORT AUTO PARTS, INC. was founded by Alina Menendez and her spouse Silverio Menendez, who has recently passed away. Plaintiff is in the business of exporting automobile parts to over 80 countries.

17. Since the year 2011, XPORT AUTO PARTS, INC. has continuously and without interruption operated under the name and utilized the trademark/service mark "Xport Auto Parts" to market its services throughout the world, and based on this prior use, owns the trademark/service mark "Xport Auto Parts" (hereinafter also referred to as the "Trademark") and is entitled to trademark protection of its name.

18. Since its inception, XPORT AUTO PARTS, INC. has spent well over $1,211,648 advertising and marketing its services and brand over the Internet using its Trademark.

19. As a result of XPORT AUTO PARTS, INC.'s use of the Trademark throughout since the year 2011, including extensive advertising and promotion of its services, the Trademark is distinctive and has become well known and famous in the geographic regions in which Plaintiff does business, has acquired name recognition and invaluable good will, and has acquired secondary meaning such that the public throughout the 80 countries in which it

does business associates the Trademark with XPORT AUTO PARTS, INC.'s high quality products and service.

20. While XPORT AUTO PARTS, INC. principal place of business is located in Hialeah, Florida, it has clientele from around the world who purchase products from the company. Thus, its Internet advertising, which primarily takes place on its website, www.xportautoparts.com, is essential to market its services to individuals and clients around the world.

21. The Plaintiff XPORT AUTO PARTS, INC.[1] acquired the domain name www.xportautoparts.com on or about September 9, 2011 through the domain name registrar GoDaddy.com, LLC, a nominal defendant to this action. GoDaddy.com is a registrar, that is, an organization that is accredited to sell domain names that are managed by Verisign, the top-level domain name registry of .com domain names[2].

---

[1] The Domain Name was originally registered to Silverio Menendez under his personal name and at all times thereafter in and for the exclusive benefit of Xport Auto Parts, Inc. Silverio Menendez was one of the two principals and shareholders of Xport Auto Parts, Inc., the other principal and shareholder being Silverio Menendez's spouse, Alina Menendez. Silverio Menendez has since passed away, and Alina Menendez is the successor in interest to Xport Auto Parts, Inc. At all times since the registration of the Domain Name, all income derived therefrom has been for the exclusive benefit of Xport Auto Parts, Inc., and all payment processing and shopping cart checkout facilities on the website were processed into Xport Auto Parts, Inc. merchant and bank accounts.

[2] Non-party ICANN manages the Domain Name System (DNS) and accredits registrars to sell top-level domain names (such as .com, .net, .info). As relates to .com domain names, ICANN has authorized Verisign as the top-level domain name registry for the management of the registration of .com domain names (through ICANN accredited registrars), and of their domain name system (DNS). The 2012 ".com Registry Agreement" between ICANN and Verisign can be accessed online at https://www.icann.org/resources/agreement/com-2012-12-01-en .





22. Plaintiff XPORT AUTO PARTS, INC., utilized the website that was accessible through the Domain Name to operate a promotional web page for its business, and the Domain Name has generated business and income exclusively for XPORT AUTO PARTS, INC. For instance, all merchant accounts, virtual terminals and e-commerce shopping cart payment facilities from the Domain Name were, since its inception, owned and operated by XPORT AUTO PARTS, INC.

23. In support of and as proof of Plaintiff's ownership of the Trademark, the following exhibits are attached hereto:

    a. A copy of the email confirming the initial registration of the www.xportautoparts.com registration in September of 2011,[3] attached as Exhibit "A" hereto.

    b. Business Tax Receipts from 2011 to present, attached as composite Exhibit "B" hereto.

    c. Annual Resale Certificate for Sales Tax for the years 2011, 2013, 2014, 2017, 2018 and 2019, attached as Exhibit "C" hereto.

    d. Google Adwords Account detail for www.xportautoparts.com from December 3, 2013 to present, representing $1,211,648.80 invested in advertisements for the domain name, attached as Exhibit "D" hereto.

    e. Photos of the XPORT AUTO PARTS, INC.'s logo and advertisements, attached collectively as Composite Exhibit "E" hereto, which demonstrate that XPORT AUTO PARTS, INC. is the owner of the Xport Auto Parts name, and are indicative of OUR extensive use of the Xport Auto Parts name in commerce.

24. On or about August 15, 2019, the Plaintiff discovered that its domain name had been transferred without Plaintiff's authorization to a different named owner, Defendant Unknown Registrant, with a different registrar, Reg.Ru. Like Nominal Defendant GoDaddy, Defendant Registrar of Domain Names Reg.Ru, LLC is a registrar that is accredited to sell .com domain names, operated by Verisign.

---

[3] The domain name was originally registered by my father Silverio Menendez, who was one of the two principals of Xport Auto Parts, Inc., the other principal being my mother Alina Menendez. Unfortunately, my father Silverio Menendez has since passed away, and the business, including all intellectual property and the www.xportautoparts.com domain name, remain property of Xport Auto Parts, Inc., of which my mother is the only living remaining shareholder.

7





25. The Plaintiff's account was hacked by Defendant Unknown Registrant, who fraudulently transferred the domain name www.xportautoparts.com to Defendant Unknown Registrant's own account with Defendant Registrar of Domain Names Reg.Ru, LLC in the hope of extracting a ransom or quick payoff from the owner.

26. The Defendant Unknown Registrant's transfer of the domain name www.xportautoparts.com was in bad faith, and for the singular purpose of seeking to extract a ransom from Plaintiff.

27. Indeed, Plaintiff received ransom letters via email, copies of which are attached as Exhibit "F," in which the Defendant Unknown Registrant demands payment in bitcoin to transfer the domain name back to the Plaintiff.

28. The Domain Name is highly valuable and its loss has deprived the Plaintiff of the income revenue generated by the business as well as depriving Plaintiff of sales of its auto parts and development of new client relationships.

29. Based upon knowledge and belief, non-party ICANN has authorized Defendant Reg.Ru, LLC as an ICANN accredited registrar to sell .com domain names, managed by Verisign, and therefore ICANN and Verisign can facilitate the transfer of a .com domain name between .com registrars and to the proper registrant.

30. Thus, ICANN and Verisign provide the means and online facilities through which the Defendant Unknown Registrant is transferring the domain name to its own registrar, Defendant Registrar of Domain Names Reg.Ru, LLC.

31. The Defendant Unknown Registrant's unlawful activities have deprived Plaintiff of its right to utilize its domain name in connection with its sale of auto parts in interstate commerce and around the world. Indeed, the Defendant Unknown Registrant is seeking to profit illegally by demanding ransom from the Plaintiff. Defendant Unknown Registrant should not be permitted to continue its unlawful activities, which is causing the Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting the Defendant Unknown Registrant and the Defendant Reg.Ru from further wrongful use of Plaintiff's domain name, and a writ of mandamus requiring the Defendant VERISIGN to transfer the domain name back to GoDaddy and back to Plaintiff's possession.

32. Moreover, Plaintiff has good reason to believe that the Defendants will further transfer, sell or otherwise further remove the Domain Name from the Court's access unless immediately restrained. To preserve the Plaintiff's ability to obtain a remedy against the

on an *ex parte* basis. For these same reasons, Plaintiff is in immediate need of a preliminary injunction and therefore requests the entry of a preliminary injunction on an expedited basis pursuant to Local Rule 7.1(d)(2) of the U.S. District Court for the Southern District of Florida.

33. Plaintiff requests that a ruling be entered as soon as possible, but in any case before September 12, 2019. An expedited ruling within this time frame would limit the ongoing loss of Plaintiff's mark, goodwill and customers, thereby minimizing the harm being caused to Plaintiff while increasing the likelihood that Plaintiff may obtain meaningful relief.

34. For the reasons set forth in paragraph 33 above and within the body of this verified motion, Plaintiff requires injunctive relief without notice to the Defendants pursuant to Fed. R. Civ. P. 65 and applicable case law.

## IV. ARGUMENT

### A. A Temporary Restraining Order is Essential to Prevent Immediate Injury

35. Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where it clearly appears from the specific facts shown by affidavit "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).

36. The Plaintiff is suffering, and continues to suffer, irreparable harm by way of loss of its website and portal to the world, its business, its clientele and new potential clientele, and by ongoing embarrassment of its customers entering a non-functioning website and potentially then taking its business elsewhere.

10

by ongoing embarrassment of its customers entering a non-functioning website and potentially then taking its business elsewhere.

37. Moreover, due to the daily losses of business, customers and potential customers, the injury is immediate and exacerbated by any delays in obtaining the injunctive relief requested herein. The entry of a temporary restraining order would serve to immediately stop the Defendants from benefiting from the wrongful taking of the Plaintiff's domain name and demands for ransom. *See Dell, Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding that *ex parte* relief is acceptable where Defendants' scheme "is in electronic format and subject to quick, easy, untraceable destruction by Defendants.").

38. Unless a temporary restraining order without notice is granted, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the Defendants can take further actions to further transfer the domain name and remove it from this Court's reach. Such actions can happen instantaneously after Defendants are provided with notice of this action, thereby thwarting the Court's ability to grant meaningful relief.

**B. Standard for Temporary Restraining Order and Preliminary Injunction**

39. It is well settled that a temporary restraining order should be granted where the moving party is able to demonstrate the existence of the following: (a) irreparable injury will be suffered if relief is not granted, (b) that there is a substantial likelihood of success on the merits, (c) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (d) an injunction would not disserve the public interest. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522

F.3d 1211, 1217 (11th Cir. 2008); *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

### 1. Irreparable Injury Will Be Suffered If Relief Is Not Granted

40. As set forth above, irreparably injury will result if the Defendants are permitted to continue holding the Plaintiff's domain name under an unauthorized registrant account under the Defendant Unknown Registrant's name, being maintained by the Defendant Reg.Ru. The loss of the domain name is causing irreparable damage to the Plaintiff's reputation, brand, image, customer relationships and potential customer relationships.

### 2. Likelihood of Success on the Merits on Plaintiff's Claim under the Anti-Cybersquatting Consumer Protection Act 15 U.S.C. 1125 § (d)(1).

41. As set forth in Count I of Plaintiff's Complaint, 15 U.S.C. 1125 § (d)(1) provides that "a person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark."

42. In the case at hand, the name "Xport Auto Parts" is distinctive and entitled to protection.

43. Additionally, the Defendant Unknown Registrant fraudulently hijacked the domain name www.xportautoparts.com from the Plaintiff in bad faith, as demonstrated by the ransom e-mails sent by Defendant Unknown Registrant attempting to profit from the theft.

44. Accordingly, Plaintiff has a high likelihood of success on the merits as to Count I for violation of the Anti-Cybersquatting Consumer Protection Act.

### 3. The Harm Suffered by Plaintiff In The Absence of an Injunction Exceeds the Harm Suffered by the Opposing Party if the Injunction Issued.

45. The harm that is being suffered by Plaintiff far outweighs the potential harm that may be suffered by the Defendants if an injunction were to be issued.

46. The Plaintiff is suffering, and continues to suffer, irreparable harm by way of loss of revenue, loss of business and loss of business opportunities.

47. To date, Plaintiff is aware of a loss of approximately $125,000-$145,000 in revenue.

48. Additionally, because of Defendant Unknown Registrant's actions, Plaintiff is being prevented from using and exercising control over its domain name.

49. Defendant Unknown Registrant will not suffer any harm if this Court grants an injunction and transfers the domain name back to the Plaintiff, the rightful owner. Defendant Unknown Registrant's sole purpose in hijacking the domain name is to extract a ransom from the Plaintiff.

50. Accordingly, the relative potential harm to be suffered by the Defendants by entry of an injunction is minimal as compared with the harm that the Plaintiff continues to suffer in the absence of an injunction.

### 4. The Entry of Injunctive Relief Would Serve the Public Interest.

51. The public interest would be served by enjoining the Defendant Unknown Registrant's theft of the Plaintiff's domain name.

52. Federal statutes have codified protection to the public from cybercrimes such as this one by way of the Anti-Cybersquatting Consumer Protection Act.

53. The public interest would also be served in preventing internet thieves from profiting off of unlawfully stealing domain names for the purpose of extracting a ransom.

### 5. Plaintiff Lacks an Adequate Remedy at Law.

54. The Plaintiff's right and ability to use and control its domain name and Trademark has been violated by the actions of Defendants. Furthermore, the Plaintiff is being prevented from being able to operate its business, which is substantially conducted online through its website at the www.xportautoparts.com domain name, causing irreparable harm to the Plaintiff and its reputation. As such, Plaintiff's remedies are limited, and simple monetary damages are insufficient to cure the damages suffered by Plaintiff.

55. Injunctive relief is the only remedy available to prevent further irreparable harm to the Plaintiff.

## V. CONCLUSION

56. Due to the substantial loss Plaintiff continues to suffer as a result of Defendant Unknown Registrant's unlawful hijacking of Plaintiff's domain name and Trademark, equity requires that

   a. The Defendant Unknown Registrant be immediately enjoined from further registering and trafficking in the domain name www.xportautoparts.com;

   b. The Defendant Unknown Registrant be ordered to immediately transfer the domain name www.xportautoparts.com back to Plaintiff's account at the GoDaddy, LLC.com registrar; and

   c. To the extent that Defendant Unknown Registrant does not comply with paragraph (a) and (b) above within 24 hours of entry of a Temporary Restraining Order, Non-Parties ICANN and Verisign shall, within one business day of receipt

57. The balance of potential harm to Defendants in restraining their unauthorized use of the illegally obtained domain name if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff if such relief is not granted.[4]

58. Moreover, if Plaintiff proceeds on notice to the Defendants of this Application for Temporary Restraining Order, Defendant Unknown Registrant can easily and quickly transfer ownership and registration of the domain name to another account with another registrar, thereby thwarting Plaintiff's ability to obtain meaningful relief.

59. Finally, Plaintiff requests that this Court enter a ruling on an expedited basis pursuant to Local Rule 7.1(d)(2) of the U.S. District Court for the Southern District of Florida. For the reasons stated in this motion, Plaintiff requests that a ruling be made on or before September 12, 2019.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court enter immediate injunctive relief as set forth in this verified motion; that this Honorable Court enter an Order compelling the Defendants Unknown Registrant and Reg.Ru and all others acting in concert with the said Defendants to transfer the Domain Name back to the Plaintiff's account with the GoDaddy.com LLC registrar; prohibiting the Defendants Unknown Registrant and Reg.Ru from taking any action to deprive the Plaintiff of its ownership and use of its Domain Name www.xportautoparts.com; and for such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: September 5, 2019

---

[4] The balance of potential harm to the Defendants, in fact, is so far greatly outweighed by the actual harm being suffered by the Plaintiff that no bond, or a nominal bond, should be required of the individual Plaintiff in this action and the Plaintiff respectfully request this Honorable Court to forego a bond or only require a nominal bond based upon the circumstances.

Respectfully submitted,

                              Recalde Law Firm, P.A.
                              10800 Biscayne Blvd, Suite 440
                              Miami, FL 33161
                              Ph: 305-792-9100
                              Fax: 1-305-517-1407
                              By: /s/ Geremy Klein
                              Geremy Klein, Esq.
                              FBN: 106981
                              Rafael Recalde, Esq.
                              FBN: 60040
                              Primary: geremy@recaldelaw.com
                              Secondary: rafael@recaldelaw.com

## CERTIFICATION REGARDING NOTICE PURSUANT TO RULE 65(b)(1)(B)

Notice of this *Ex Parte* Expedited Motion for Temporary Restraining Order, Preliminary Injunction and Memorandum of Law in Support Thereof should not be required because unless a temporary restraining order without notice is granted, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights and can take further and malicious actions to transfer ownership and registration of the domain name to another account with another registrar. Such actions can happen instantaneously after Defendants are provided with notice of this action, thereby thwarting the Court's ability to grant meaningful relief.

Geremy Klein, Esq.

## **VERIFICATION**

STATE OF FLORIDA        )
COUNTY OF MIAMI-DADE )

    I, Joe Menendez, having personally appeared before the notary public whose signature and seal are affixed to this document, and being __✓__ personally known to the notary public or __✓__ having produced the following identification __RDCM 553 421 8L 0470__ and not otherwise being a person whose document the notary public is prohibited from authorizing under Section 117.05(6), Florida Statutes, duly swear, depose, and state that I have examined the foregoing document and that allegations are true, correct and based upon my personal knowledge.

Sign: _____
Name: Joe Menendez

Sworn and subscribed before me this __4th__ day of __September__, 2019.

_____
Signature

__Robert Gewanter__
Print Name

*Notary Public-State of Florida*

My commission expires:

(seal)

ROBERT GEWANTER
Commission # GG 216642
Expires September 10, 2022
Bonded Thru Budget Notary Services